

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER PENA, | ) |
| Plaintiff, | ) |
| | ) **05C 3571** |
| v. | ) No. |
| | ) **JUDGE ZAGEL** |
| A & C LANDSCAPING, INC., an | ) |
| Illinois Corporation; EARTH, INC, | ) **MAGISTRATE JUDGE LEVIN** |
| and Illinois Corporation; | ) |
| THOMAS KANZLER, individually; | ) **FILED** |
| GEORGE KANZLER, individually; | ) |
| JAMES SNYDER, individually, and | ) JUN 2 0 2005 |
| BRUCE LARSON, individually, | ) |
| | ) **MICHAEL W. DOBBINS** |
| Defendants. | ) **CLERK, U.S. DISTRICT COURT** |

## COMPLAINT

**NOW COMES** the Plaintiff, Peter Pena ("Plaintiff"), by and through his attorneys, The Thollander Law Firm, and complains against the Defendant, A&C LANDSCAPING, INC., an Illinois Corporation (hereinafter "Defendant A&C"); EARTH, INC., and Illinois Corporation (hereinafter "Defendant Earth"); THOMAS KANZLER, individually (hereinafter "Defendant Thomas Kanzler"); GEORGE KANZLER, individually (hereinafter "Defendant George Kanzler"); JAMES SNYDER, individually (hereinafter "Defendant Snyder"); and BRUCE LARSON, individually (hereinafter "Defendant Larson"), as follows:

### NATURE OF ACTION

1. This action is brought pursuant to the discharge of Plaintiff for failing to cooperate and participate in a scheme to defraud Defendant A&C's employees of earned wages. Plaintiff brings an action pursuant to the Racketeer Influenced and Corrupt

Organizations Act (18 U.S.C. § 1961, *et seq.*) and state pendent claims for retaliatory discharge and failure to pay earned wages in violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*).

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is conferred and invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 18 U.S.C. 1962(c).

3. Venue is proper in this judicial district under 28 § 1391(b) and (c) because Plaintiff and all of the Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district

## THE PARTIES

4. Plaintiff is an individual with a place of residence located in Cook County, Illinois.

5. Defendant A&C is an Illinois corporation engaged in the business of excavating dirt, earth, stone and other materials. Defendant A&C's principal place of business is located at 810 North Arlington Heights Road, Suite 1, City of Itasca, County of DuPage, State of Illinois.

6. Defendant Earth is an Illinois Corporation engaged in the business of excavating and moving dirt, earth, stone and other materials. Defendant Earth's principle place of business is located at 801 North Arlington Heights Road, Suite 1, City of Itasca, County of DuPage, State of Illinois,.

7. Defendant Thomas Kanzler is the President of Earth, Inc., and the agent of Defendant A&C, with a place of residence located at 801 North Arlington Heights Road, Suite 1, City of Itasca, County of DuPage, State of Illinois.

8. Defendant George Kanzler is the President of Defendant A&C, with a place of residence located at 801 North Arlington Heights Road, Suite 1, City of Itasca, County of DuPage, State of Illinois.

9. Defendant Snyder is the Comptroller for Defendant A&C and Defendant Earth.

10. Defendant Larson is the General Manager of Defendant A&C and Defendant Earth.

## COUNT I

### (CIVIL RACKETEER INFLUENCE AND CORRUPT ORGANIZATION "RICO" v. ALL DEFENDANTS)

11. Plaintiff incorporates and realleges paragraphs 1 through 10 as if fully set forth herein.

12. Plaintiff brings his claims under 18 U.S.C. § 1962.

**Defendants engaged in the pattern of Racketeering Activity**

13. On or about July 1998, Plaintiff commenced employment with the Defendant A&C.

14. Defendant A&C provides certain excavating services. As such, Defendant A&C utilizes heavy machinery and equipment to perform the aforesaid services.

3

15. Defendant A&C is a union shop, employing laborers whom are union members of Local 1. Defendant A&C similarly employs machine operators whom are union members of the operating engineers, Local 150.

16. Defendant A&C union employees are entitled to certain hourly wages, benefits and entitlements.

17. Assignments, promotions and benefits of employment with Defendant A&C are controlled by Defendant Thomas Kanzler and Defendant George Kanzler.

18. At all relevant times pertinent hereto, Plaintiff's adult sons, Peter Pena, Jr., and Daniel Pena were employed by Defendant A&C as machine operators. Plaintiff's sons were, and are, members of the operating engineers union, Local 150.

19. On or about July 2000, Plaintiff was promoted by Defendant Thomas Kanzler to Superintendent of Operations for Defendant A&C where he earned wages of $25.00 per hour.

20. For the ensuing seven (7) years of his employment, Plaintiff consistently met or exceeded core expectations associated with his position.

21. Defendant A&C, Defendant Earth, Defendant Thomas Kanzler, Defendant George Kanzler, Defendant Snyder and Defendant Larson did engage in a scheme to defraud and extort money out of employees of Defendant A&C by deliberately and intentionally paying less than union hourly wages, benefits and entitlements to machine operators and by fabricating, falsifying, and doctoring such records associated with the operations of Defendant A&C so as to conceal said scheme.

22. During the period Defendant A&C, Defendant Earth, Defendant Thomas Kanzler, Defendant George Kanzler, Defendant Snyder and Defendant Larson did engage

4

in a scheme to defraud and extort money out of employees of Defendant A&C by paying union employees less than their entitled wages in an amount substantially greater than $135,000.00.

23. Defendant Earth, through its officials, did similarly engage in a scheme to defraud and extort money out of employees of Defendant A&C by cooperating and aiding said scheme and benefiting financially therefrom.

24. Each of the Defendants benefited from the scheme to defraud and extort money out of union employees of Defendant A&C by either sharing the monies not paid to those employees or such otherwise financially benefiting from said scheme.

25. On or about April 11, 2005, union representatives from the operating engineers union Local 150, through an investigation into Defendant A&C's business practices, uncovered Defendant A&C's pattern of deliberately mischaracterizing the activities of union members so as to pay a lesser union scale. Defendant A&C thereby paid its union employees less than the hourly union wage scale for the work and services actually performed by said employees, to and including Plaintiff's sons.

26. On or about April 11, 2005, union representatives from the operating engineers union Local 150, through an investigation into Defendant A&C's business practices, uncovered Defendant A&C's pattern of deliberately failing to pay union employees, to and including Plaintiff's sons, the actual hours worked, to and including the failure to pay overtime, so as to cheat, shortchange and otherwise defraud its union employees of monies rightfully owed.

27. As a result of the Local 150's discovery, Local 150 mandated that Defendant A&C tender past wages due and owing to a significant number of its

employees, including Plaintiff's sons who were owed collectively back wages in excess of $135,000.00.

28. On April 13, 2005, Defendant George Kanzler directed Plaintiff's son, Peter Pena, Jr., to return a Plaintiff's work vehicle, vehicle owned by Defendant A&C, to Defendant A&C's office. Immediately following return of this vehicle by Peter Pena, Jr., Defendant George Kanzler did demand that Peter Pena, Jr. travel with him in his vehicle for the purpose of having a discussion with Peter Pena, Jr. Thereafter, Peter Pena, Jr. did agree to travel with Defendant George Kanzler.

29. During this ensuing discussion, Defendant George Kanzler made the following demands and threats:

    (a) to fire Peter Pena Jr.'s father, Plaintiff, if he failed to return to Defendant A&C monies owed to him by Defendant A&C.

    (b) to drive said vehicle into a tree, striking the tree on the side where Peter Pena, Jr. was sitting.

    (c) to commit murder.

30. On April 19, 2005, Plaintiff was approached by Defendant Larson and advised that Plaintiff would be fired from Defendant A&C if he did not secure the return to Defendant A&C monies owed to his sons.

31. On April 19, 2005, Plaintiff was called to a meeting with Defendant Thomas Kanzler.

32. During this meeting Defendant Thomas Kanzler did advise Plaintiff that Defendant A&C intended to pay Plaintiff's sons the back wages and entitlements, but that such payments were to be immediately returned to Defendant A&C. Defendant Thomas

Kanzler did demand that Plaintiff secure his sons' cooperation in the return of said monies and in consideration for the foregoing, Plaintiff would remain employed by Defendant A&C and have a *"future"*. Defendant Thomas Kanzler further demanded that Plaintiff secure his sons' agreement to falsely state to the Department of Labor that these individuals were paid overtime, when in fact, Plaintiff's sons were not paid overtime.

33. During this meeting, Defendant Thomas Kanzler did advise Plaintiff that if he could not secure the return of the monies intended to be paid to his sons, he would be fired.

34. On April 19, 2005, Defendant Larson did advise Plaintiff that if he secured the return of monies owed to his sons, he would have a *"job"*.

35. On April 22, 2005, Plaintiff was called to a meeting with Defendant George Kanzler and Defendant Thomas Kanzler whereupon Defendant George Kanzler and Defendant Thomas Kanzler did demand that Plaintiff secure his sons' cooperation in the return of said monies and in consideration for the foregoing, Plaintiff would remain employed by Defendant A&C.

36. Immediately following this meeting Defendant George Kanzler and Defendant Snyder did discuss, in the presence of Plaintiff, the return to Defendant A&C of monies to be paid to Plaintiff's sons.

37. Defendants Thomas Kanzler, George Kanzler and A&C, through its agents and officers, did affirmatively threaten Plaintiff on multiple occasions that if he did not secure his sons' agreement to return the monies received by them, he would be fired.

38. Plaintiff refused to concede to Defendants' threats and demands.

7

39. As a result of Plaintiff's refusal to comply with Defendants' demands, on April 25, 2005, Plaintiff was fired from his employment with Defendant A&C.

40. Defendants conduct in engaging in a pattern and practice of RICO activity has resulted in employees of Defendant A&C being defrauded of money and being subjected to materially false and fraudulent pretenses and representations, material omissions and actions of concealment for the protection of the scheme to defraud employees out of earned hourly wages.

### The Pattern of Racketeering Activity

41. Defendants fraudulent acts are not isolated, but rather are part of a fraudulent pattern of conduct through which the Defendants cheated Defendant A&C's employees out of monies while misrepresenting actual amounts due and owing.

42. The pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1) and (5) consisted of the following acts:

(a) On or about 2003 to the present, Defendants embarked upon a scheme and agreement to defraud union members employed by Defendant A&C of wages due and owing pursuant to union scale.

(b) On or about 2003 to the present, the same Defendants embarked upon a scheme and agreement to defraud union members employed by Defendant A&C of wages due and owing by deliberately cheating, shortchanging, miscalculating and otherwise failing to pay the actual hours worked by its union members.

(c) On or about April 13, 2005, Defendants threatened physical harm if monies were not returned to Defendant A&C.

(d) Defendants extorted or attempted to extort monies from Plaintiff's sons by threatening to terminate Plaintiff's employment with Defendant A&C.

(e) On or about 2003, Defendants committed theft in violation of Illinois law (720 ILCS 5/16-1) in that Defendants retained monies rightfully due and owing Defendant A&C's employees with the intent to permanently deprive those employees of monies due and owing.

### Common Scheme to Defraud

43. All predicated acts are related and were committed with a common scheme in mind: to defraud employees of Defendant A&C, and in particular union members, of wages, benefits and entitlements rightfully owed and to obtain money from Defendant A&C's employees by expressing materially false and fraudulent pretenses and representations, material omissions and by actions of concealment and protection of the scheme.

44. It was part of the scheme to falsify records of the hours actually worked by Defendant A&C's employees and to pay a wage scale below the union wage scale ascribed to the actual duties and activities of Defendant A&C's employees.

45. It was a further goal of the scheme to defraud employees, including Plaintiff's sons, of wages, benefits and entitlements due and owing, by expressing that Plaintiff's continued employment be conditioned upon him securing the return of monies owed to his sons.

46. It was a further part of the scheme to defraud employees, including Plaintiff's sons, of wages, benefits and entitlements due and owing by promising that Plaintiff's job would be preserved upon securing the return of monies owed to his sons.

## Enterprise

47. Defendants were an association, in fact an enterprise as defined by 18 U.S.C. § 1961(4), that was and is engaged in, and its activities affect, interstate commerce (hereinafter "Enterprise").

48. The structure of the Enterprise is comprised of all of the Defendants, of which Defendant George Kanzler and Defendant Thomas Kanzler are the final policy makers and to which they have command and control.

49. From 2003 and continuing thereafter, the Defendants were employed by and associated with the Enterprise, which was engaged in and the activities of which affected interstate commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that Enterprise through a pattern of racketeering activity through the commission of two or more racketeering acts set forth herein.

50. At all relevant times, Defendants knowingly and willingly associated with the association-in-fact Enterprise comprised of the Defendants and conducted and participated in the conduct of the Enterprise's affairs directly and indirectly by defrauding and extorting money out of employees of Defendant A&C for the benefit of the Defendants and the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962.

51. The pattern of racketeering engaged in by the Defendants involved at least two separate but related schemes, carried out from at least 2003 to present and were directed at Plaintiff and other employees/victims.

52. Defendants' conduct is likely to continue into the present, as it has in the past, and constitute their regular course of business, separate and distinct from the lawful activities of Defendant A&C.

53. The aforesaid conduct of the Defendants has resulted in damages to Plaintiff, including but not limited to loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

54. Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiff, Peter Pena, respectfully requests that this Court grant him the following relief:

A. All wages and benefits Plaintiff would have received but for Defendants' unlawful conduct, including but not limited to back pay, front pay, and prejudgment interest;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by the Defendants' conduct;

C. A permanent injunction enjoining Defendants from engaging in the unlawful conduct complained of herein;

D. Treble or punitive damages as allowed by law;

E. An award of attorneys' fees, costs, and litigation expenses; and

F. Such other and further relief as this Court may deem just and equitable.

## COUNT II

### (WRONGFUL and RETALIATORY DISCHARGE AGAINST DEFENDANT A&C)

1-39. Plaintiff re-pleads and re-alleges paragraphs 1 through 39 of Count I as paragraphs 1 through 39 of Count II, as if fully set forth herein.

40. Plaintiff's discharge was retaliation for Plaintiff refusing to submit to the tactics of the Defendants, including Defendant A&C, to extort money from Plaintiff's sons.

41. Defendant A&C's actions in discharging Plaintiff were in contravention of one or more clearly mandated Illinois public policies, including but not limited to, the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*); Section 16-3 of the Illinois Criminal Code (720 ILCS 5/16-3); the public policy of Illinois; and the right of employees to receive their complete earned wages in accordance with statutory and contractual guidelines.

42. Defendant A&C's actions were malicious and unwarranted.

43. Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiff, Peter Pena, respectfully requests that this Court grant him the following relief:

A. All wages and benefits Plaintiff would have received but for Defendants' unlawful conduct, including but not limited to back pay, front pay, and prejudgment interest;

B.  Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by the Defendants' conduct;

C.  A permanent injunction enjoining Defendants from engaging in the unlawful conduct complained herein;

D.  Treble or punitive damages as allowed by law;

E.  An award of attorneys' fees, costs, and litigation expenses; and

F.  Such other and further relief as this Court may deem just and equitable.

## COUNT III

### THE ILLINOIS WAGE PAYMENT ACT
### 820 ILCS 115/1 *et seq.* AGAINST DEFENDANT A&C

1-39.  Plaintiff re-pleads and re-alleges paragraphs 1 through 39 of Count I as paragraphs 1 through 39 of Count III, as if fully set forth herein.

40.  At all relevant times pertinent to the events giving rise to this litigation, there was in full force and effect the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.*)(hereinafter the "Act").

41.  On or about 2003, Defendant unilaterally and without lawful mandate reduced Plaintiff's hourly rate from $25.00 an hour to $20.00 an hour, in an attempt to manipulate Plaintiff's compensation.

42.  In addition thereto, to date Plaintiff has not received compensation for all of his earned overtime hours.

43.  Pursuant to the Act, Plaintiff is entitled to be paid his earned wages at the next scheduled pay date.

44. Defendant A&C has failed to pay Plaintiff all earned and entitled compensation, to and including overtime.

45. Defendant A&C's actions have been willful and deliberate and is thus in direct violation of the Act.

46. Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiff, Peter Pena, respectfully requests that this Court grant him the following relief:

A. All wages and benefits Plaintiff should have received but for Defendant A&C's unlawful conduct, including but not limited to overtime pay and prejudgment interest;

B. An award of attorneys' fees, costs, and litigation expenses; and

C. Such other and further relief as this Court may deem just and equitable.

## COUNT IV

### (ILLINOIS WAGE PAYMENT ACT (820 ILCS 115/1 *et seq.*) AGAINST DEFENDANT A&C)

1-40. Plaintiff re-pleads and re-alleges paragraphs 1 through 40 of Count III as paragraphs 1 through 40 of Count IV, as if fully set forth herein.

41. In 2001, Plaintiff was seriously injured while on a job for Defendant A&C and during the course of his employment with Defendant.

42. As a direct and proximate result of the injury, Plaintiff incurred significant medical expenses which were the obligation of Defendant A&C as Plaintiff's employer.

43. In July 2004, Defendant A&C unilaterally and without legal mandate began deducting, without the authorization or consent of Plaintiff, $100.00 from each and every paycheck received by Plaintiff.

44. Subsequent thereto, Plaintiff inquired as to this unauthorized deduction and Defendant A&C maintained that it was entitled to compensation from Plaintiff for Defendant A&C's worker's compensation related expenditures.

45. Defendant A&C has unlawfully garnished Plaintiff's earned wages.

46. Pursuant to Section 9 of the Act, unilateral, non-legally mandated deductions from wages by an employer are prohibited.

47. Defendant A&C's deductions from Plaintiff's wages were willful and deliberate and in clear violation of the Act.

48. Plaintiff requests a trial by jury.

**WHEREFORE**, Plaintiff, Peter Pena, respectfully requests that this Court grant him the following relief:

A. All wages and benefits Plaintiff should have received but for Defendant A&C's unlawful conduct, including but not limited to overtime pay and prejudgment interest;

B. An award of attorneys' fees, costs, and litigation expenses; and

C. Such other and further relief as this Court may deem just and equitable.

*Respectfully submitted,*

Peter Pena

By: _____
One of his attorneys

David C. Thollander
The Thollander Law Firm
1048 Ogden Avenue, Suite 200
Downers Grove, Illinois 60515
Phone: (630) 971-9195
Facsimile: (630) 971-9240 (Service by facsimile expressly declined)
A.R.D.C. 6202012