# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PETER PENA,<br><br>    Plaintiff,<br><br>    v.<br><br>A&C LANDSCAPING, INC., an Illinois corporation; EARTH, INC., an Illinois corporation; THOMAS KANZLER, individually; GEORGE KANZLER, individually; JAMES SNYDER, individually; and BRUCE LARSON, individually,<br><br>    Defendants. | No. 05 CV 3571<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In June of 2005, Plaintiff Peter Pena ("Pena"), former employee of Defendant A&C Landscaping, Inc. ("A&C"), filed a complaint against A&C, Earth Inc. ("Earth"), and individual defendants Thomas Kanzler, George Kanzler, James Snyder, and Bruce Larson – employees of A&C and/or Earth, Inc. The complaint consisted of four counts: a civil RICO claim against all defendants; a claim of wrongful and retaliatory discharge against defendant A&C; and two claims of violations of the Illinois Wage Payment Act against defendant A&C. I previously granted Plaintiff's motion for partial summary judgment on one of the Illinois Wage Payment Act claims. Defendants move, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings on the RICO claim, the basis for this court's jurisdiction over the complaint.[1]

---

[1] I converted Defendants' motion into one for partial summary judgment under Federal Rule of Civil Procedure 56 and directed the parties to proceed accordingly.

For the following reasons, Defendants' motion is granted.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir.2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III. STATEMENT OF RELEVANT FACTS

In July 1998, Plaintiff Pena began his employment at A&C, a company that provides excavating services. In July 2000, Pena was promoted to a supervisory position in both A&C and Earth, Inc. In November and December 2000, Pena's sons, Daniel and Peter Jr., were employed by A&C as excavation machine operators. A&C is a union shop, employing laborers from Local 1 and machine operating engineers from Local 150. These union employees are entitled to the hourly union wage and benefits. Both Peter Jr. and Daniel became members of Local 150 in May 2003. Pena is not a union member.

On or around April 11, 2005, Local 150 received an anonymous complaint concerning activities at a specific work site. In response, Local 150 sent a Business Agent to the work site. After arriving, the Agent observed Peter Pena, Jr. operating a backhoe, in the process of digging a foundation. The Agent discovered that Peter Jr. was a member of Local 150, with a full union card. After further questioning, the Agent learned that both Peter Jr. and his brother Daniel were earning $10.00 per hour less than the scale specified by the Heavy & Highway & Underground Agreement. Union agents contacted A&C and had two meetings with Defendant Bruce Larson, General Manager of Earth, Inc., but the matter remained unresolved. As a result, union agents filed a grievance against A&C for failing to pay the Pena Brothers proper scale. Union auditors commenced both wage and benefit audits of Defendants A&C and Earth.

On April 19, 2005, Plaintiff claims he met with Defendant Kanzler, President of Earth, and that Kanzler told Plaintiff that his sons would be paid back wages, but that in order to keep his job, Plaintiff would have to secure the return of the money to A&C. Plaintiff further claims that he was also approached by Defendant Larson and advised that he would be fired if he didn't return to A&C the money owed to his sons. On April 25, 2005 Plaintiff was fired from his job at A&C.

In October 2005, Local 150 auditors reported that the Pena brothers were owed approximately $100,000 in wages and that the Fringe Benefit Fund was owed approximately $53,000. Subsequently the Pena brothers' grievance was presented to a Joint Grievance Committee in November 2005, which resulted in a deadlock. According to the Heavy & Highway & Underground Agreement, if the Joint Grievance Committee is unable to resolve the grievance, it may be submitted to a neutral arbitrator. In this case, Steve Cisco, Recording

Secretary for Local 150, settled the Pena brothers' grievance for $40,823.27. Witnesses state that Defendant Larson told them that a member of the grievance committee was paid a bribe of $25,000 to fix the outcome.

## IV. DISCUSSION

Plaintiff brings Count I under 18 U.S.C. § 1962 based on claims that Defendants engaged in "a scheme to defraud and extort money out of employees of Defendant A&C by deliberately and intentionally paying less than union hourly wages, benefits and entitlements to machine operators and by fabricating, falsifying, and doctoring such records associated with the operations of Defendant A&C...." To the extent that Plaintiff brings his claims pursuant to sections 1962(c) and (d), Defendants assert that Plaintiff's RICO claims cannot withstand the motion for summary judgment for three reasons: (1) Plaintiff fails to properly allege the existence of a RICO enterprise and to identify Defendants' roles within that enterprise, (2) Plaintiff fails to allege predicate acts with the requisite continuity, and (3) Plaintiff lacks standing because he fails to plead any concrete damages proximately caused by the alleged RICO scheme. Because Plaintiff has failed to establish the existence of a RICO enterprise, I need not reach the second and third issues.

RICO section 1962(c) provides:

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Violations of this section require "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Plaintiff alleges an association in fact enterprise, defined by RICO as "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (citation omitted). A RICO enterprise must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990). "Moreover, because a RICO enterprise is more than a group of people who get together to commit a pattern of racketeering activity, there must be an organization with a structure and goals separate from the predicate acts themselves." *Stachon*, 229 F.3d at 675 (citations omitted).

Plaintiff maintains that he has sufficiently established the existence of a RICO enterprise. According to Plaintiff, Defendants George and Thomas Kanzler are ring leaders of the enterprise. Defendant Snider, accountant for A&C and controller for Earth, is responsible for creating false payroll reports and monthly reports to the Fringe Benefit Fund. Defendant Larson, General Manager of Earth, threatened to fire Plaintiff if his sons failed to return the money, and this, Plaintiff claims, pinpoints his authority in the enterprise. The purpose of this enterprise is "to make money, knowingly and deliberately paying Local 150 operators and other union members" under scale.

Plaintiff fails to establish the existence of a RICO enterprise. He has not established anything more than the possibility that a group of people acted in concert to commit fraud. He provides no evidence regarding the scope, duration, or origin of the alleged enterprise. *See*

5

*Stachon*, 229 F.3d at 676 (holding that plaintiffs failed to allege a RICO enterprise where they named a string of participants in a fraud, but made no allegations as to the scope and duration of the enterprise itself); *EQ Financial, Inc. v. Personal Finance Co.*, 421 F. Supp. 2d 1138, 1144 (N.D. Ill. 2006) (dismissing RICO claim for plaintiff's failure to establish an enterprise, where plaintiff made no allegations as to the enterprise's origin or how its structure makes it amenable to hierarchical or consensual decision-making). Plaintiff must offer more than assertions of conspiracy, otherwise "every conspiracy to commit fraud that requires more than one person to commit is a RICO organization and consequently every fraud that requires more than one person to commit is a RICO violation." *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999).

"RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does." *Stachon*, 229 F.3d at 676. In this case, Plaintiff has not established an organization and structure separate from the predicate acts he identifies. While the claim when made was colorable, it has failed of proof. I retain jurisdiction of the state law claims under my supplemental jurisdiction. This case is well along in its proceeding and the applicable state law is straightforward. Therefore, no useful purpose will be served by requiring Plaintiff to start anew (if he could) in state court. *See Timm v. Mead Corp.*, 32 F.3d 273, 276-277 (7th Cir. 1994) (where a district court's "jurisdictional hook" is eliminated before trial, "it is entirely acceptable under the discretionary principle for a federal court to decide [pendant state] claims even after dismissing the main claim" as long as "considerations of judicial economy, convenience, fairness, and comity are weighed" and point "in the direction of the district court's discretionary determination whether or not to exercise jurisdiction").

6

## V. CONCLUSION

For the foregoing reasons, I grant Defendants' motion for partial summary judgment on Count I.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: January 28, 2009